UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LYMAR CURRY,

  Plaintiff,

    v.           Civil Action No.  10-1651 (JEB)

BANK OF AMERICA HOME LOANS
SERVICING, et al.,

  Defendants.

<u>MEMORANDUM OPINION</u>

Plaintiff Lymar Curry obtained a loan from Defendants Bank Of America Home Loans

Servicing and Bank Of America for the purchase of a condominium in the District of Columbia.

He later became unable to afford the monthly payments and sought a loan modification from

Defendants.  After being refused, he filed this suit claiming that Defendants unlawfully rejected

the modification.  Defendants have now filed a Motion to Dismiss on the ground that Plaintiff's

two causes of action for a declaratory judgment and negligence are facially infirm.  Concurring,

the Court will grant the Motion.

I.  **Background**

According to Plaintiff's Complaint, which must be presumed true for purposes of this

Motion, he applied for and received a loan from Defendants in January 2008 in the amount of

$236,000 to purchase a condominium.  Compl., ¶ 6.  Following extensive litigation between

himself and the developer, he could no longer afford the monthly payments required under his

agreement.  Id., ¶¶ 7-8.  He arranged by telephone with Defendants' legal department two

forbearance periods spanning the last few months of 2009 and the first few months of 2010.  Id.,

¶ 9.  In connection with this forbearance, Defendants accelerated Plaintiff's missed payments and also increased his monthly payments.  Id., ¶ 10.  In February 2010, Plaintiff claims that Defendants offered him a loan modification by telephone.  Id., ¶ 11.  Plaintiff then received and completed a loan-modification contract, but Defendants denied the modification, allegedly because it was not properly notarized.  Id., ¶¶ 12-13.  Plaintiff was forced to reapply for a loan modification twice more, as Defendants misplaced his second application.  Id., ¶ 15.  In August 2010, he received a foreclosure notice, but he was notified, again by telephone, that the sale would be canceled if he was approved for a loan modification by September 30, 2010.  Id., ¶ 16.

   Plaintiff next filed suit in the Superior Court of the District of Columbia in September 2010, seeking a declaratory judgment and negligence damages resulting from Defendants' allegedly unlawful denial of his loan modification.  A temporary restraining order was granted on September 22, 2010, enjoining Defendants from going forward on the foreclosure sale of Plaintiff's home.  Defendants removed the case to this Court a week later, and they have now filed a Motion to Dismiss.[1]

## II.    Legal Standard

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor.  Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993).  The notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he or she must thus be given every favorable inference that may be drawn from the allegations of fact.

---

[1]      In considering this Motion, the Court has reviewed Plaintiff's Complaint, Defendants' Motion to Dismiss, Plaintiff's Opposition thereto, Defendants' Reply, and Plaintiff's Surreply.

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Twombly, 550 U.S. at 555, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

A motion to dismiss under Rule 12(b)(6) must rely solely on matters within the complaint, see FED. R. CIV. P. 12(d), which includes statements adopted by reference as well as copies of written instruments joined as exhibits. FED. R. CIV. P. 10(c).

## III.    Analysis

Defendants seek the dismissal of Plaintiff's Complaint for failure to state a claim. They argue that Plaintiff can obtain no relief from this Court because Defendants never entered into a loan-modification agreement with him. Tellingly, they point out, Plaintiff does not assert a claim here for breach of contract. In bringing causes of action for declaratory judgment and negligence, Plaintiff is attempting to circumvent the law of contracts. Finally, they maintain that, to the extent Plaintiff could amend his Complaint to allege the existence of an oral contract, such a contract would be unenforceable as violative of the statute of frauds. The Court first turns to Plaintiff's negligence claim.

A. <u>Negligence</u>

Plaintiff initially alleges that Defendants owed him "a duty to use due care in processing his loan modification application and forbearances." Compl., ¶ 26. Defendants argue that they owed him no such duty since there was no contractual obligation to modify his loan. Reply at 2. Plaintiff counters that Defendants owed him the "duty to use due care that every legal entity owes to every other legal entity." Surreply at 6. This bare assertion is simply too vague to establish an element of negligence, and Plaintiff cites no authority to the contrary. This, however, is just one infirmity from which his negligence claim suffers.

This cause of action rests on the premise that the loan modification would be a valid contract but for Defendants' allegedly negligent decision not to accept it because of inadequate notarization. This is how Plaintiff reaches the conclusion that Defendants' rejection of the notarization led to the damages he allegedly suffered. <u>See</u> Compl., ¶ 30. Plaintiff's claim is based on one of two mistaken assumptions. First, he appears to maintain that a valid contract was created the moment he signed and notarized the loan-modification form. If this were true, however, his claim would be for breach of such contract, not negligence. Second, he alternatively argues after a fashion that Defendants had some sort of duty to enter into a contract with him. Yet, the hallmark of American contract law is that private parties are free to enter into lawful contracts with one another. <u>See</u> <u>Manhattan Co. v. Goldberg</u>, 88 A.2d 172, 174 (D.C. 1944) ("[i]ndividuals have the right to contract on their own terms in respect to their private concerns and engagements"); <u>see also</u> 174 Am. Jur. 2d Contracts § 222 ("In general, parties are free to contract as they see fit, on any terms regarding a subject matter in which they have an interest, provided that the contract does not impose obligations that are contrary to statute, public policy, or an established rule of the common law.").

Assuming he had pled a breach of contract, it is clear that the contract-modification agreement form used by Defendants must be signed and notarized by both parties. See Compl., Exh. 2 (Loan Modification Agreement) at 2-3. It may well be that Defendants' agents led Plaintiff to believe that Defendants would be interested in ratifying the contract and that Plaintiff thus believed that the modification would be automatically accepted. Nonetheless, the form sent to Plaintiff clearly required further action by Defendants in the form of a signature by one of their agents. As the copy of the agreement provided to the Court has not been signed by Defendants, it cannot be said that a meeting of the minds ever took place. It is simply not enough for Plaintiff to have signed the agreement where the other party did not. Even if the notarization were adequate, therefore, Defendants were free to change their minds and refuse to sign the contract for another reason, or indeed for no reason at all. No contract was created by the terms of the loan-modification agreement because Defendants did not ultimately agree to them, as attested by the fact that they did not sign the agreement. In fact, Plaintiff himself pleads that Defendants offered him a loan modification in February 2010 and informed him that "he met all the requirements" for it. Compl., ¶ 11. His response was to "appl[y] for a loan modification." Opp. at 2. This phrasing shows that Plaintiff himself did not believe that signing the form automatically created a contract, as he acknowledges that further action by Defendants -- *i.e.*, approval of his application -- was required.

Indeed, even if a contract had somehow been created between the parties, Plaintiff's negligence claim would still not survive because "[t]he omission to perform a contractual obligation does not ordinarily create a cause of action in tort as between the contracting parties." Towers Tenant Ass'n, Inc. v. Towers Ltd. Partnership, 563 F. Supp. 566, 570 (D.D.C. 1983), quoted in RLI Ins. Co. v. Pohl, Inc. of America, 468 F. Supp. 2d 91, 95 n.6 (D.D.C. 2006).

Thus, "the mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." Id. (internal quotation and citation omitted) (emphasis deleted). As in Towers Tenant and RLI, "an action for breach of contract is the recognized and appropriate avenue of relief" for Plaintiff in this case. Id. It is quite possible that Plaintiff did not assert a breach-of-contract claim because he did not believe that he could prove the existence of a contract. Such inability, however, cannot transform his claim into a cognizable tort.

It would not be appropriate in this case, moreover, to allow Plaintiff to amend his Complaint to include a breach-of-contract claim. As set out above, no meeting of the minds ever occurred. To the extent Plaintiff were to claim that he had some sort of telephonic agreement with Defendants, such purported contract would run afoul of the statute of frauds. The D.C. Code provides that "[a]n action may not be brought . . . upon a contract or sale of real estate, of any interest in or concerning it . . . unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing, . . . signed by the party to be charged therewith or a person authorized by him." D.C. Code § 28-3502. As the D.C. Court of Appeals has found, the "statute of frauds mandates that certain agreements, including those concerning real estate, must be in writing to guard against perjury and protect against unfounded and fraudulent claims." Railan v. Katyal, 766 A.2d 998, 1007 (D.C. 2001) (internal quotation omitted). It is clear that the original loan agreement "concern[s] real estate" since it is a mortgage for a condominium. See District of Columbia Redevelopment Land Agency v. Dowdey, 618 A.2d 153, 156 n.1 (D.C. 1992) (finding that an "oral agreement to mortgage land ... is within the statute of frauds") (citing 1 Symons, POMEROY'S EQUITY JURISPRUDENCE § 1237 at 704 (5th ed. 1941)).[2]

---

[2]     Defendants may also be right that the contract is governed by the statute of frauds because the loan modification agreement sets forth payment terms over a period of 30 years and thus cannot be performed within one

The statute of frauds governs not only original contracts for land, but also oral modifications to written contracts.  See Landow v. Georgetown-Inland West Corp., 454 A.2d 310 (D.C. 1982).  In this case, the deed of trust – the first contract between the parties regarding the real estate in question – was valid because it was in writing.  Any alleged oral modification, however, would be violative of the statute of frauds.

Certain limited exceptions exist to the statute of frauds, such as when the defendant's own fraud was responsible for the non-existence of the written agreement, when part performance warrants enforcement of the contract, or when the defendant has waived the defense by admitting the existence of the contract.  See Railan, 766 A.2d at 1008.  None of these is applicable in this instance, however.  Amendment to include a contract claim would therefore be futile.  See James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.")

B.  Declaratory Judgment

Plaintiff also brings an independent cause of action for "Declaratory Judgment."  Compl., ¶¶ 19-24.  Although no reference to it appears in the Complaint, this claim is apparently based on the Declaratory Judgments Act, 28 U.S.C. § 2201.  See Surreply at 4.  In this count, Plaintiff asks the Court to rule "that the notarization is not defective under District of Columbia law, that District of Columbia law governs this controversy, that Defendants must reopen Plaintiff's loan modification application, and that Defendants must halt efforts to foreclose upon Plaintiff's condominium home."  Compl., ¶ 24.  Much of this count, therefore, is actually a prayer for relief, rather than an independent cause of action.  To the extent Plaintiff was able to bring a stand-

year.  See DC Code § 28-3502 (D.C. statute of frauds also covers those agreements that are "not to be performed within one year from the making thereof"); see also Motion at 3; Loan Modification Agreement at 1.  The Court need not consider this alternative argument.

alone claim for declaratory relief, there must be some controversy for the Court to settle. In other words, Courts may not make wide-ranging declarations about the relative rights of parties; instead, "'the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Federal Exp. Corp. v. Air Line Pilots Ass'n, 67 F.3d 961, 964 (D.C. Cir. 1995) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

In this case, given that the parties did not enter into any binding contract, there is nothing left for this Court to adjudicate. Even if it sought to exercise a very broad form of discretion to make some pronouncement about, for example, the legitimacy of the notarization, that would add nothing to the dispute. As the Court has explained in Section III.A, *supra*, the notarization is irrelevant. There was no meeting of the minds, nor was there a written contract that could survive a challenge under the statute of frauds. In such a circumstance, there is nothing for the Court to declare. See Ali v. Rumsfeld, 2011 WL 2462851 at *10 (D.C. Cir. June 21, 2011) ("plaintiffs have not alleged a cognizable cause of action and therefore have no basis upon which to seek declaratory relief").

IV.    **Conclusion**

Because Plaintiff's negligence claim cannot survive and declaratory relief is not appropriate in this case, the Court will dismiss the case. An Order accompanying this Memorandum Opinion will be issued this day.

**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:   August 10, 2011